IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JOHN R. PITTS, JR., #M13166,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-cv-01347-NJR |
| | ) |
| **ANTHONY WILLIS,** | ) |
| **J.B. PRITZKER,** | ) |
| **ROB JEFFREYS,** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **SHEILA M. RAMSEY,** | ) |
| **and MEDICAL STAFF for MENARD C.C.,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff John R. Pitts, Jr., brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center ("Menard"), where he is incarcerated. Pitts claims that Menard officials failed to provide him with medical treatment or testing in August and September 2020 for what he believes was a COVID-19 infection. He seeks monetary damages. (Doc. 18, p. 7).

The Court previously reviewed Pitts's First Amended Complaint (Docs. 12 and 12-1) and concluded that it failed to state a claim upon which relief may be granted. (Doc. 14). The pleading did not associate Pitts's factual allegations with any particular individual defendant, instead asserting that unidentified "medical staff," "correctional officers," and "the counselor" violated his rights. (Doc. 14, p. 3). Further, the pleading did not provide the named defendants with adequate notice of the claims against them because they were not mentioned in the body of the First Amended Complaint. *Id.* The Court dismissed the First

1

Amended Complaint without prejudice to Pitts filing a Second Amended Complaint. *Id.*

Pitts filed a new Amended Complaint (Doc. 15) but soon after asked the Court to strike it (Doc. 17) and submitted his Second Amended Complaint along with a number of exhibits. (Doc. 18).

The Second Amended Complaint (Doc. 18) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE SECOND AMENDED COMPLAINT

Pitts presents the following allegations in five numbered counts in the Second Amended Complaint (Doc. 18; Doc. 18-1, pp. 18-19): On August 21, 2020, he submitted a medical request because he was having severe body aches, chills, hot flashes, and a loss of taste and smell. (Doc. 18, p. 6). No medical staff responded, so on August 27, 2020, Pitts submitted another request reporting his symptoms and requesting a COVID-19 test. (Doc. 18, p. 6; Doc. 18-1, p. 5). On September 1, 2020, he submitted a third medical request. (Doc. 18, p. 6; Doc. 18-1, p. 4). His requests were never answered.

On September 4, 2020, Pitts submitted an emergency grievance. (Doc. 18, p. 6). He got no response, so he wrote to the counselor to check on its status. She replied that there was no grievance on file regarding his COVID issues. (Doc. 18, p. 6; Doc. 18-1, p. 2). Pitts then filed two more grievances over the lack of medical care, again getting no response. (Doc. 18, p. 6; Doc. 18-1, pp. 6-9). He wrote to the counselor about the grievances and was again informed that neither grievance was in the record. (Doc. 18, p. 6; Doc. 18-1, pp. 1, 3). He wrote three

letters to the grievance officer about the lack of response to his grievances over the medical concerns. (Doc. 18-1, pp. 13, 15, 17).

Pitts attaches copies of letters he wrote to Warden Willis on September 20, October 23, and October 26, 2020, complaining of the failure of staff to respond to his medical requests and the lack of response to his grievances. (Doc. 18-1, pp. 12, 14, 16). Pitts included his symptoms (loss of smell and taste, headaches, body aches, and severe cough) that began on August 18, 2020, but stated that he was "feeling much better" as of the time he sent the letter to Willis on September 20, 2020. (Doc. 18-1, p. 12).

Pitts asserts Eighth Amendment claims against Defendants Pritzker, Jeffreys, and Willis for failing to take action after being informed that prison staff were not following COVID-19 safety protocols, resulting in Pitts becoming infected (Count 1). (Doc. 18-1, p. 18). Count 2 claims that Pritzker, Jeffreys, and Willis suspended all inmate access to medical care and/or failed to remedy staff delays and denial of medical treatment during the pandemic. *Id.* In Count 3, Pitts claims that Wexford Health Sources, Inc., ("Wexford") was deliberately indifferent for its policy and practice of failing to adequately staff the health care unit at Menard, and medical staff did not follow COVID-19 safety protocols, thus denying him medical care. (Doc. 18-1, pp. 18-19). In Count 4, Pitts asserts an intentional infliction of emotional distress claim against Pritzker, Jeffreys, Wexford, and Willis for turning a blind eye to his complaints of inadequate medical care for COVID-19, causing him to suffer depression and emotional distress. (Doc. 18-1, p. 19). Finally, Pitts lodges a deliberate indifference claim against Ramsey for failing to process his grievances over inadequate medical care (Count 5). *Id.*

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

**Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Pritzker, Jeffreys, and Willis for failing to take action to protect Pitts from infection with COVID-19 despite being informed that staff were not following COVID-19 safety protocols, which were insufficient to prevent spread of the disease.

**Count 2:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Pritzker, Jeffreys, and Willis for failing to ensure Pitts had access to medical care and treatment when he complained of COVID-19 symptoms.

**Count 3:** Eighth Amendment deliberate indifference to serious medical needs claims against Defendant Wexford for its policy/practice of understaffing at Menard which caused Pitts to be denied treatment, and against Defendant Menard Medical Staff for failing to follow COVID-19 safety protocols and denying Pitts treatment for his COVID-19 infection.

**Count 4:** Intentional infliction of emotional distress claim against Defendants Pritzker, Jeffreys, Wexford, and Willis for failing to provide Pitts with medical or mental health care after he complained of inadequate medical care for his COVID-19 infection.

**Count 5:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Ramsey for failing to process Pitts's grievances over inadequate medical care.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its

face.").

### Counts 1 and 2

Prison staff and medical providers violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* Further, "deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

Pitts attached handwritten copies of three letters he wrote to Warden Willis in September and October 2020 which gave Willis notice that prison staff ignored Pitts's medical needs. Pitts alleges Willis took no action in response. At this stage, the allegations in the Second Amended Complaint are sufficient to proceed against Defendant Willis on the deliberate indifference claims in Count 1 and Count 2.

The allegations fail to state a claim, however, against Defendants Pritzker and Jeffreys as to Counts 1 and 2. Pitts does not set forth any facts that would indicate that either Pritzker or Jeffreys was made aware of his medical issues, the alleged deficiencies in medical services, or staff's alleged failure to follow COVID-19 protocols yet turned a blind eye to these problems or to Pitts's requests for treatment. Nor can these Defendants be held liable in a civil rights action merely because they hold supervisory positions. *Chavez v. Ill. State Police*, 251 F. 3d 612, 651 (2001) (defendants cannot be held liable based solely on their positions as administrators or supervisors under Section 1983). Pritzker and Jeffreys will therefore be

dismissed from Counts 1 and 2.

### Count 3

At this early stage, Pitts states a viable claim in Count 3 against Wexford for maintaining a policy and practice of understaffing the Menard medical unit as a cost-saving measure, resulting in Pitts being denied medical treatment when he manifested COVID-19 symptoms. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation).

As in his original Complaint, Pitts has failed to identify any individual medical provider who allegedly ignored his requests for medical treatment. Pitts was advised in the Order dismissing his original pleading that his allegations "must be made against *individuals*, and when a plaintiff does nothing but state that a group of individuals harmed him without providing more, all he has done is establish that there is a 'sheer possibility' that someone in that group harmed him." (Doc. 14, p. 2) (emphasis added). Because Pitts once again asserts a claim against the entire group of "Medical Staff" at Menard, this portion of Count 3 shall be dismissed without prejudice.

If Pitts can identify any individual medical provider(s) who failed to respond to his requests for medical treatment, he may submit a motion for leave to amend his complaint, accompanied by a proposed Third Amended Complaint, in accordance with Federal Rule of Civil Procedure 15(a) and SDIL-Local Rule 15.1.[1] An individual whose name is not known

---

[1] Local Rule 15.1 provides that "[a] proposed amendment to a pleading or amended pleading itself must be submitted at the time the motion to amend is filed." Further, all new material in an amended pleading must be underlined.

may be identified as a "Jane/John Doe," but the proposed amended complaint should include descriptive information such as the unknown defendant's job title, shift worked, location, and the like, to assist in the person's eventual identification. Pitts is reminded that an amended complaint supersedes and replaces all prior pleadings, thus a Third Amended Complaint must contain the allegations supporting each count that will proceed in this case, as well as any exhibits supporting the pleading. The amended complaint must stand on its own, without reference to any prior pleading. The Court will not accept piecemeal amendments. Finally, any amended complaint is subject to review pursuant to 28 U.S.C. § 1915A. (See Doc. 14, pp. 4-5).

**Count 4**

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla. 1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective

standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

According to the Second Amended Complaint, Pitts experienced depression and emotional distress due to his fear that he could die from his COVID-19 infection. The Court does not doubt the sincerity of this allegation. The pleading does not remotely suggest, however, that any Defendant acted with intent or knowledge that his conduct would result in severe emotional distress. Nor do the factual allegations suggest that any Defendant engaged in truly extreme and outrageous conduct. As such, the amended complaint fails to satisfy the elements of intentional infliction of emotional distress under Illinois law. Count 4 will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 5

According to the Second Amended Complaint, Sheila Ramsey is the Grievance Office Coordinator. Pitts claims that she refused to allow his grievances to be processed or placed on the record for further evaluation, and this amounted to deliberate indifference to his serious medical need. (Doc. 18-1, p. 19).

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution does not require any procedure, thus the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Accordingly, Defendant Ramsey's alleged failure to process

Pitts's grievances does not support an independent constitutional claim.

Furthermore, the allegations do not demonstrate that Ramsey was aware that Pitts was being denied medical care yet turned a blind eye to his serious need for treatment. *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (deliberate indifference claim may lie against non-medical prison officials who were made aware of serious medical condition and inadequate medical care yet failed to intervene). According to the self-copied documents attached as exhibits, Pitts wrote grievances dated September 14 and September 23, 2020, which were never addressed. (Doc. 18-1, pp. 6-9). He does not indicate that he delivered either one to Ramsey. Pitts also directed three letters to a "Grievance Officer," dated September 20, October 23, and October 26, 2020. (Doc. 18-1, pp. 13, 15, 17). It is unclear whether any of these letters were addressed to or received by Ramsey, and Pitts does not allege that he ever spoke to Ramsey about these issues.

For these reasons, Count 5 against Ramsey will be dismissed for failure to state a claim upon which relief may be granted.

## DISPOSITION

**COUNTS 1 and 2** will proceed against **WILLIS** but are **DISMISSED without prejudice** as to **PRITZKER** and **JEFFREYS**. **COUNT 3** will proceed against **WEXFORD HEALTH SOURCES, INC.** but is **DISMISSED without prejudice** as to **MEDICAL STAFF for MENARD C.C**.

**COUNTS 4** and **5** are **DISMISSED without prejudice**. **DEFENDANTS J.B. PRITKER, ROB JEFFREYS,** and **MEDICAL STAFF for MENARD C.C.** are **DISMISSED** from the action without prejudice.

The Clerk of Court shall prepare for Defendants **ANTHONY WILLIS** and **WEXFORD**

9

**HEALTH SOURCES, INC.**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Docs. 18 and 18-1), and this Memorandum and Order to each Defendant's place of employment as identified by Pitts. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Pitts, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Pitts is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs. *See* 28 U.S.C. § 1915(f)(2)(A).

Pitts is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than

**7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED:  December 14, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file Answers to your Complaint. It will likely take at least **60 days** from the date of this Order to receive Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling and Discovery Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.