IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN R. PITTS, JR., <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY WILLS and <br> WEXFORD HEALTH SOURCES, INC., <br><br> Defendants. | Case No. 20-cv-1347-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff John R. Pitts, Jr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard'), brings this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Specifically, he alleges that in August and September 2020 officials at Menard failed to provide him with proper treatment for his Covid-19 symptoms.

This matter is before the Court on motions for summary judgment filed by Defendants Wexford Health Sources, Inc. (Docs. 36, 37) and Anthony Wills (Docs. 40, 41). Pitts filed a response (Doc. 43) to both motions. On July 20, 2022, the Court held an evidentiary hearing.

### BACKGROUND

On December 17, 2020, Pitts filed his initial Complaint against Defendants (Doc. 1). On May 13, 2021, he submitted an Amended Complaint (Doc. 12). That Amended

Complaint was dismissed, and he was granted leave to file a Second Amended Complaint (Doc. 14). On June 16, 2021, Pitts filed his Second Amended Complaint (Doc. 18) alleging officials failed to provide him with treatment or testing for what he believes was a Covid-19 infection (Doc. 20). His Second Amended Complaint set forth the following claims:

> Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Wills for failing to take action to protect Pitts from infection with Covid-19 despite being informed that staff were not following Covid-19 safety protocols, which were insufficient to prevent spread of the disease.
>
> Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Wills for failing to ensure Pitts had access to medical care and treatment when he complained of Covid-19 symptoms.
>
> Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Wexford for its policy/practice of understaffing at Menard which caused Pitts to be denied treatment.

(Doc. 20, p. 4).

Both Wexford and Wills argue that Pitts failed to file any grievances during the relevant time period regarding his claims. They point to two grievances submitted by Pitts during the relevant time period. An August 29, 2020 grievance (No. 387-8-20) dealt with rectal pain caused by hemorrhoids and lack of access to a high fiber diet (Doc. 37-2, pp. 10-11). The grievance received a counselor response but does not appear to have been appealed to the grievance office or the Administrative Review Board ("ARB") (*Id*. at p. 12).

A second grievance dated September 21, 2020 (No. 242-9-20) dealt with his requests for clothing (*Id*. at pp. 13-15). That grievance also received a response from the

counselor but was not pursued any further through the grievance process (*Id.*).

Pitts maintains, however, that he filed three grievances related to his claims. On September 4, 2020, Pitts filed an emergency grievance concerning medical care and a Covid-19 test. After not receiving a response, on September 10, 2020, he submitted a kite to Counselor Quick (Doc. 43, p. 14). Quick responded that no grievance was on file (*Id.*). Pitts resubmitted the grievance on September 14, 2020. He again received no response. On September 23, 2020, he submitted the grievance for a third time (*Id.* at p. 16). On September 30, 2020, he contacted Counselor Quick about the status of his grievance, and she indicated that no grievance regarding his medical treatment was on file (*Id.* at p. 15).

Pitts attaches copies of his second and third grievances to his brief (Doc. 43, pp. 16-19).

> **September 14, 2020 Grievance**: The grievance indicates that Pitts filed an emergency grievance on August 29, 2020 but received no response (Doc. 43, p. 18). He previously submitted a medical request due to Covid-19 symptoms including the inability to taste or smell (*Id.*). He submitted requests for testing on August 21, August 27, and September 1 with no response (*Id.* at p. 19). Pitts also complains about the procedure of moving inmates from quarantine without first testing them which he believes has caused the spread of Covid-19 throughout the prison. He complains that an inmate was placed in his cell who had just been removed from quarantine without testing. He notes that staff do not wear masks properly. He blames the warden for failing to implement measures to stop the spread of the virus. He also blames the lack of testing on Wexford.
>
> **September 23, 2020 Grievance**: The grievance indicates it is the third grievance regarding the denial of a Covid-19 test (Doc. 43, p. 16). Pitts indicates that he placed the previous grievances in the grievance box when the box was brought through the cellhouse. Pitts submitted his first grievance on September 4, 2020 at 9:15 a.m. His second grievance was submitted on September 14, 2020 at 9:05 p.m. (*Id.*). His grievance indicates that he submitted medical requests on August 21, August 27, and September 1, informing medical staff of possible Covid-19 symptoms (*Id.* at

pp. 16-17). He was not tested for the virus. The grievance indicates that the warden has a responsibility to ensure that all inmates are safe and given medical treatment but that the administration was not testing in accordance with their own Covid-19 flyer (*Id.* at p. 17). The grievance also indicates that the facility placed a second inmate in the cell with him who had previously been quarantined but that inmate was not provided a Covid-19 test prior to being celled with Pitts (*Id.*). Pitts attributed the failure to provide medical treatment and testing to Wexford and its failure to train and inform staff of proper procedures (*Id.*).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a

prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Pitts was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures

first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the

CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Defendants argue that Pitts failed to exhaust his administrative remedies, arguing that Pitts failed to file any grievances regarding Covid-19 testing. Pitts argues that he tried

to submit grievances on three occasions but never received a response. If believed, then he would have been thwarted in his attempts to exhaust his grievances and his claims would be deemed exhausted. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

The Court finds Pitts's testimony as to his grievances to be credible. He testified that he submitted grievances regarding Covid-19 testing on three occasions. Each time he submitted a grievance, he wrote a kite to Counselor Quick requesting the status of the grievance. He attaches the kites that he wrote to his brief along with Quick's responses, which lends credibility to his testimony. The Court finds it unlikely that Pitts would fail to submit grievances and then submit fake kites on numerous occasions to falsify the record. Further, Quick testified that, in addition to the kites, she spoke with Pitts on October 1, 2020, during her weekly tour and he again asked her about the status of his grievances related to Covid-19. This further supports Pitts's testimony that he submitted grievances on the issue and was actively trying to determine the status of those grievances.

Although Quick testified that she never received the grievances, she also testified that she did not retrieve the grievances from the locked box in the housing units. Instead, the black box goes to the grievance office where the grievances are numbered and stamped and then transferred to clinical services where they are placed in the counselor's box. Because Quick does not retrieve the grievances from the black box herself, it is entirely plausible that Pitts placed the grievances in the black box on the gallery, as he testified, and then they were either lost or destroyed before they were delivered to Quick.

The Court does find it troubling that some of Pitts's grievances, including his grievances regarding clothing and his hemorrhoids, were delivered to the counselor while his grievances regarding Covid-19 were not received by Quick. But all of the evidence in the record seems to suggest that this is exactly what happened. Pitts placed his grievances in the box on three occasions and none of those grievances reached Quick. Defendants, who bear the burden of proving non-exhaustion, have not offered any evidence suggesting otherwise. *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). Thus, the Court finds that Pitts was thwarted in his attempts to exhaust his claims against Wexford and Anthony Wills.

Defendants make much of the fact that Pitts filed his original Complaint on December 17, 2020. They argue that even if he filed his grievances and they were never returned, he did not wait long enough before filing suit. Wexford's counsel argued at the evidentiary hearing that grievances are submitted to the counselor and then go to the grievance counselor who has two months to report his findings to the CAO. He then argued that appeals have to be submitted to the ARB within 30 days, and the ARB then has six months to respond. But the Court finds that Pitts was thwarted in submitting his grievances to the counselor. He did not have to wait for the timeline of an appeal because there was no grievance to appeal. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response).

Wexford also argues that the grievances Pitts submitted to the Court did not contain any allegations against Wexford. But both his September 14, 2020 and September

23, 2020 grievances mention Wexford and their failure to provide Pitts with adequate medical care. Pitts was not required to point to a specific policy as the grievance process is not designed to provide a defendant with notice of the potential claims against them. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)). The grievance is designed to "alert the state to the problem and invite corrective action." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (internal quotations omitted). His grievances attempted to alert officials to his issues with his medical care after displaying Covid-like symptoms and Wexford's role in that care. He provided enough information to exhaust his claims against Wexford.

## CONCLUSION

For the reasons stated above, the motions for summary judgment filed by Wexford Health Sources, Inc. (Docs. 36, 37) and Anthony Wills (Docs. 40, 41) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:** July 21, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**