IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN R. PITTS, JR.,

        Plaintiff,

v.

ANTHONY WILLS and WEXFORD
HEALTH SOURCES, INC.,

        Defendants.

Case No. 20-cv-1347-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    This matter is currently before the Court on motions for summary judgment filed by Wexford Health Sources, Inc. ("Wexford") (Docs. 61, 62) and Anthony Wills (Docs. 67, 68). Plaintiff John R. Pitts, Jr. filed responses to both motions (Docs. 66, 70). For the reasons set forth below, Defendants' motions are granted.

### FACTUAL BACKGROUND

    Plaintiff John R. Pitts, Jr., an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Western Illinois Correctional Center ("Western"), brought this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights while at Menard Correctional Center ("Menard"). Pitts alleges Defendant Anthony Wills was deliberately indifferent in responding to an outbreak of Covid-19 at Menard and in failing to ensure that Pitts had access to treatment for his Covid-19 symptoms. He further alleges that Wexford had a policy and/or practice of

understaffing the healthcare unit at Menard which also caused Pitts to be denied treatment for his symptoms.

On either August 19 or 20, 2020, while housed at Menard, Pitts woke up not feeling well (Doc. 68-1, pp. 31-32). He lacked an appetite, a sense of taste, and felt lightheaded (*Id*.). Over the next few days, he developed a headache, body aches, loss of taste/smell, chills, and hot flashes (*Id*. at pp. 31-34). This was during the height of the Covid-19 pandemic when the facility was on lockdown (*Id*. at pp. 47, 65, 110). Pitts testified that before he became ill, he received a memo from the prison director instructing inmates to notify medical staff immediately of any symptoms related to Covid-19 (*Id*. at pp. 47-48). Staff were quarantining inmates with high temperatures and giving inmates Covid-19 tests (*Id*. at p. 106). Pitts testified that he was unaware of any other treatment for Covid-19 at the time, other than quarantining (*Id*. at p. 116-117).

On August 21, 2020, Pitts submitted a sick call request by writing a handwritten note and placing it in his cell bars (*Id*. at pp. 34-35). He did not speak to any medical staff, and he did not receive a response to his sick call request (*Id*. at p. 39). On August 27, 2020, Pitts submitted a second request (*Id*. at p. 40; Doc. 18-1, p. 5). This request noted that he lost his sense of smell and taste (Doc. 18-1, p. 5). He also requested a Covid-19 test (*Id*.). He did not receive a response to the request (Doc. 68-1, p. 49). To combat his symptoms, Pitts testified that he took Ibuprofen twice a day (*Id*. at p. 48). On August 29, he submitted an emergency grievance (*Id*. at p. 58).[1] Although he did not receive a Covid-19 test, Pitts

---

[1] Pitts testified that he filed a grievance related to his Covid-19 symptoms. A later filed grievance mentions that Pitts submitted an earlier grievance on August 29, 2020 (Doc. 18-1, p. 6). A

testified that nurses did take his temperature while he slept (*Id.* at p. 67). But he never received any notice of the results of the temperature checks (*Id.* at pp. 67-68). On August 29, 2020, a nurse practitioner noted in Pitts's medical file that his temperature was 97.6º Fahrenheit (Doc. 62-4, p. 1).

By September 1, 2020, Pitts testified that he had started feeling better (Doc. 68-1, p. 50). His body aches and headaches lessened, but he still lacked a sense of smell or taste (*Id.* at pp. 50-51). He also stopped taking Ibuprofen for his symptoms (*Id.* at p. 54). He submitted his third request for medical care that same day, noting that he was still unable to smell or taste anything (Doc. 18-1, p. 4). He again requested a Covid-19 test (*Id.*). But Pitts acknowledged that his symptoms continued to improve, although his taste and smell kept "going in and out" (Doc. 68-1, p. 55, 62-63). On September 14, 2020, Pitts submitted a second grievance (*Id.*). And on September 23, 2020, he submitted a third grievance, again requesting a Covid-19 test (*Id.* at p. 71; Doc. 18-1, pp. 8-9). Pitts testified that by the time he submitted his grievances, he was feeling better and was "normal-ish" (Doc. 68-1, p. 70).

Pitts never received a diagnosis for his illness (Doc. 68-1, p. 44). He testified that he was not aware at the time if there were any treatments for Covid-19 (*Id.* at p. 100-102). His symptoms scared him because he was previously a heavy drug user and smoker, and he did not know if he had an underlying condition (*Id.* at p. 100). Pitts eventually received

---

grievance dated August 29, 2020, was marked dietary and requested a high fiber diet for his hemorrhoids (Doc. 68-1, pp. 59-61). Pitts testified that he filed two grievances, one regarding his diet and another about his Covid-19 symptoms (*Id.* at p. 63).

the Covid-19 vaccine once it was available (*Id*. at pp. 75-76; Doc. 62-4, pp. 2-3). He testified that he had no known lingering effects from his illness (*Id*. at p. 75).

As to Wexford, Pitts testified he did not know what Wexford's obligation was as far as staffing, but he believed that Wexford should have provided adequate staff so that he could be tested for Covid-19 (*Id*. at pp. 28-29). He specifically takes issue with the staffing at Menard during the time of his symptoms. He believes that the healthcare unit was understaffed because a nurse told him sometime in 2021 that she was not going to work first shift because the healthcare unit did not have enough nurses to staff the shift (*Id*. at p. 79, 85-87). He also testified it was common knowledge that there were not a lot of nurses on staff during the Covid-19 outbreak (*Id*. at p. 80). Pitts also testified that he did not see a lot of nurses during this time-period and a number of appointments with medical staff took place by video conference (*Id*. at p. 80). He testified that his belief regarding the number of staff on hand in the healthcare unit was based on rumors and innuendos (*Id*. at pp. 80-81).

Joseph Ebbitt, Director of Risk Management, Compliance, and Legal Affairs for Wexford, testified in an affidavit that Wexford did not have any policy or practice of understaffing the medical units at Illinois prisons (Doc. 62-2, p. 2). Ebbitt noted that Wexford did not employ nurses at Menard; rather, IDOC employed all of the nurses at Menard during the relevant time-period (*Id*.).

As to Warden Wills, Pitts testified that he never spoke to him personally during August and September 2020 (Doc. 68-1, p. 121). Instead, he submitted three letters to the warden, which he placed in the bars of his cell (*Id*. at p. 122). The letters were dated

September 20, October 23, and October 26, 2020 (*Id.* at p. 124; Doc. 18-1, pp. 12, 14, 16). In his September 20 letter, Pitts noted that he first started feeling ill on August 18, 2020, but by the time he wrote the letter he was feeling better (Doc. 18-1, p. 12). Pitts acknowledged that he was feeling better at the time but wrote the letters because he never received a response to his grievances (Doc. 68-1, p. 124). He also believed that Wills acted with deliberate indifference because he failed to respond to Pitts's grievances and letters (*Id.* at p. 127). Warden Wills testified in an affidavit that he had no recollection of ever receiving the letters (Doc. 68-2). Wills stated that any correspondence received by his office was maintained on a "Kite Log" (*Id.*), and none of Pitts's letters he testified to submitting were logged on the 2020 Kite Log (Doc. 68-3, pp. 7-8).

On December 17, 2020, Pitts filed this lawsuit. After a preliminary review of the claims, Pitts was allowed to proceed on three counts:

> Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Anthony Wills for failing to take action to protect Pitts from infection with Covid-19 despite being informed that staff were not following Covid-19 safety protocols, which were insufficient to prevent spread of the disease.
>
> Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Anthony Wills for failing to ensure Pitts had access to medical care and treatment when he complained of Covid-19 symptoms.
>
> Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Wexford Health Sources, Inc. for its policy/practice of understaffing at Menard which caused Pitts to be denied treatment.

## LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e). *See also Celotex*, 477 U.S. at 232-24. In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "inferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## DISCUSSION

The Eighth Amendment prohibits cruel and unusual punishment, and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and

wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately, that is subjectively, indifferent to that condition. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation omitted). It is not necessary for a condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted) (emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to the inmate's health. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A plaintiff need not show the individual "literally ignored" his complaint, but that the individual knew of the condition and either intentionally or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves intentional or reckless conduct, not mere medical negligence or malpractice. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Berry*, 604 F.3d at 440.

A. **Counts 1 and 2 Against Anthony Wills**

Pitts asserts that in August 2020 he developed symptoms consistent with the Covid-19 virus, including severe body aches and headache, cough, and loss of taste and smell. He argues that he was in danger of developing severe illness due to his age and demographics (Docs. 70, pp. 1-2; 68-1, p. 100). But even assuming that Pitts suffered from a serious medical condition, there is simply no evidence in the record to indicate that Wills acted with deliberate indifference to his condition.

Pitts argues that Wills displayed deliberate indifference in two ways: (1) Wills turned a blind eye to staff's failure to follow Covid-19 protocols to protect Pitts from infection (Count 1), and (2) Wills failed to obtain testing and medical care for Pitts after he began displaying symptoms (Count 2). But Wills cannot simply be liable in his position as warden because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Instead, an official is liable only if "he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017). An official must have known about the conduct, "facilitated it, approved it, condoned it, or turned a blind eye for fear of what they might see." *Id. See also Perez*, 792 F.3d at 781.

Pitts argues that Wills should have been aware of his need for medical care because he filed grievances and submitted three letters directly to Wills. But there is no evidence in the record to suggest that Wills received and read those letters or grievances. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (overruled on other grounds) (*citing Vance v.*

*Peters*, 97 F.3d 987, 994 (7th Cir. 1996)). Simply sending the letters is not enough to create an issue of material fact; Pitts must offer some evidence from which a jury could find that Wills received and had sufficient notice of Pitts's need for medical care. *Id.* ("The fact that [plaintiff] sent a letter or letters…is insufficient to create a genuine issue of material fact."). The warden's log of correspondence received from inmates during the relevant time-period shows that the warden's office did not receive any letter or other correspondence from Pitts (Doc. 68-3). Similarly, there is no evidence from which a jury could find that Wills received and reviewed Pitts's grievances. Pitts testified that he never received a response to any of his grievances (Doc. 68-1, p. 68, 71). His letters to the warden and grievance officer also acknowledge that his grievances were never received or filed in the prison's computer system for a response (Doc. 18-1, pp. 12-13). Pitts argues in his response that Wills should be held responsible for overseeing the grievance system and for failing to ensure that the grievance system worked by making the proper officials aware of Pitts's complaints (Doc. 70, p. 4). But again, Wills cannot be held liable simply for his position as warden or supervisor of those individuals responding to grievances. Nor can he be responsible for simply mishandling grievances.

Further, the letters were written *after* Pitts's illness, when he was already on the mend, as he testified in his deposition. Nothing in the letters, even if received by Warden Wills, would have put Wills on notice that he needed to intervene in Pitts's care. *Vance*, 97 F.3d at 994. Pitts's September 20 letter informed the warden that he submitted grievances which were never responded to by his counselor (Doc. 18-1, p. 12). Pitts testified that he wrote the letters because of the lack of response to his grievances. He

even acknowledged in the letter that "at this point, I'm feeling much better." (*Id.*). His October 26 letter acknowledged that "at this point, there seems to be no need for a covid test" (*Id.* at p. 16). The letters do not suggest that Pitts was still having symptoms or was continuing to suffer from a serious medical condition that was untreated. *See Perez*, 97 F.3d at 993 (plaintiff must demonstrate that "the communication, in its content and manner of transmission, gave the prison official notice to alert him or her to an excessive risk of inmate health or safety") (internal quotations omitted). Thus, Pitts fails to establish that Wills was on notice of Pitts's need for medical care and failed to act.

Similarly, there is no evidence that Wills turned a blind eye to staff's failure to follow Covid-19 protocols. Pitts points to a memo that he alleges was distributed at Menard during the Covid-19 pandemic. The memo provides details on how to properly respond to inmates displaying symptoms of Covid-19 (Doc. 18-1, pp. 10-11). These mitigating measures included restricting movement between the facility, isolating and testing inmates who were symptomatic, and quarantining those inmates who were exposed to the virus (*Id.* at p. 10).

Although Pitts offers proof of IDOC's approach to mitigating the outbreak of Covid-19, he fails to offer any evidence to suggest that Wills failed to follow the established protocols or was aware that staff were disregarding the protocols. Pitts testified that the facility was on lockdown during the period Pitts developed symptoms (Doc. 68-1, p. 65). Pitts also received a temperature check on at least one occasion during the relevant time-period. He acknowledged that some inmates were tested for Covid-19 and quarantined (*Id.* at pp. 100-101, 106-107). There is simply no evidence to suggest that

the prison failed to follow the prescribed protocols set forth by IDOC. And, as previously discussed, there is no evidence from which a jury could find that Wills was aware of any lapse in protocols. Thus, Warden Anthony Wills is entitled to summary judgment on Pitts's claims of deliberate indifference in Counts 1 and 2.

B. **Count 3 Against Wexford Health Sources, Inc.**

As a private corporation, Wexford can only be liable if the constitutional violation at issue was caused by an unconstitutional policy, practice, or custom of the corporation itself. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Although Pitts argues that Wexford maintained a policy or practice of understaffing the healthcare unit, he fails to point to an expressed policy. To the extent that he argues Wexford had a practice of understaffing medical personnel, particularly nurses, at Menard as a cost-saving measure, he must show that: (1) the corporation's practice violated his constitutional rights; and (2) the practice was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Hildreth*, 960 F.3d at 426. "This requires more than a showing of one or two missteps." *Id.* (quotation omitted). There must be "systemic and gross deficiencies," of which policymakers were aware and failed to correct them, thereby "manifesting deliberate indifference." *Id.*

Simply put, Pitts fails to offer any evidence to support that such a policy or practice of understaffing nurses or any healthcare staff existed at Menard. He testified that a nurse complained to him that the prison did not have enough nurses to work a specific shift and she had to provide care to all of the cellhouses by herself (Doc. 68-1, pp. 79, 85-86).

Pitts was unable to recall the name of the nurse, however, and he acknowledged that the conversation took place in 2021, well after his alleged infection with Covid-19 (*Id*. at p. 87). He also based his belief on rumors and common knowledge that there were shortages because he saw different nurses in the prison (*Id*. at pp. 81, 83, 91). Pitts cannot rely on speculation and rumors at this stage; he must come forward with evidence to support his claim. *Armato*, 766 F.3d at 719. And there is simply no evidence in the record to suggest that there was even a shortage of medical staff at Menard during the relevant time-period, let alone that it was a widespread practice of Wexford's. In fact, the individual overseeing risk management at Wexford, Joseph Ebbitt, stated in his affidavit that nurses were not employed by Wexford (Doc. 62-2, p. 2). Instead, the nurses at Menard were hired by IDOC directly (*Id*.). Because Pitts fails to offer any evidence to suggest that the failure to test and treat his symptoms of Covid-19 was caused by a Wexford policy or practice, Wexford is entitled to summary judgment on Pitts's claim in Count 3.

## Conclusion

For these reasons. the motions for summary judgment filed by Wexford Health Sources, Inc. (Docs. 61, 62) and Anthony Wills (Doc. 67, 68) are **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED:   February 28, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**